[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 522.]

MARSHALL, APPELLEE, *v*. ORTEGA, APPELLANT.

[Cite as *Marshall v. Ortega*, 2000-Ohio-481.]

*Medical malpractice—Where party complies with R.C. 2305.11(B)(1) and sends multiple written notices of intent to sue prior to the expiration of the one-year statute of limitations set forth in R.C. 2305.11(B)(1), the one-hundred-eighty-day period begins to run from the date the last notice is received by the potential defendants.*

Where a party complies with the requirements of R.C. 2305.11(B)(1) and sends multiple written notices of intent to sue prior to the expiration of the one-year statute of limitations set forth in R.C. 2305.11(B)(1), the one-hundred-eighty-day period begins to run from the date the last notice is received by the potential defendants. The statute of limitations for medical malpractice will not bar prosecution of an action for malpractice if that action is commenced within one hundred eighty days of the last notice.

(Nos. 98-2543 and 98-2610—Submitted October 12, 1999—Decided January 19, 2000.)

APPEAL from and CERTIFIED by the Court of Appeals for Cuyahoga County, No. 72096.

————————————

{¶ 1} On April 12, 1994, defendant-appellant Dr. Bienvenido Ortega performed a laminectomy and spinal fusion on plaintiff-appellee Gladys Marshall.

{¶ 2} On February 9, 1995, Marshall, through her attorney, sent Dr. Ortega a letter informing him that she was contemplating bringing a medical malpractice action against him. On March 9, 1995, Marshall's attorney mailed a second letter

to Ortega, which, unlike the first, explicitly claimed the benefit of R.C. 2305.11(B).[1]

{¶ 3} On September 1, 1995, Marshall filed a medical malpractice complaint against Ortega. Marshall voluntarily dismissed the lawsuit on December 19, 1995, without prejudice.

{¶ 4} On January 19, 1996, Marshall refiled her lawsuit against Ortega. Ortega moved for summary judgment, arguing that Marshall's cause of action was time-barred by R.C. 2305.11(B) because her complaint was not filed within one hundred eighty days from the time the first written letter was given. The trial court granted Ortega's motion for summary judgment. The court of appeals reversed, finding that multiple letters are permissible under R.C. 2305.11(B)(1). The court concluded that the lawsuit was timely since it was brought within one hundred eighty days from the time the second notice was given. The Eighth District Court of Appeals found that its decision was in conflict with the decision of the Fourth District Court of Appeals in *Woods v. Dutta* (1997), 119 Ohio App.3d 228, 695 N.E.2d 18, and entered an order certifying a conflict.

{¶ 5} The cause is now before this court upon the allowance of a discretionary appeal and upon our determination that a conflict exists.

————————————

*Mondello & Levey, Scott I. Levey* and *Frank P. Giaimo*, for appellee.

*Weston, Hurd, Fallon, Paisley & Howley, L.L.P., Forrest A. Norman III* and *John A. Albers*, for appellant.

*Lancione & Lancione, P.L.L.,* and *John A. Lancione*, urging affirmance for *amicus curiae,* Ohio Academy of Trial Lawyers.

————————————

1. These letters were sent by appellee's former counsel. Although the argument was made to the lower courts that the first letter was merely a letter of representation, the court of appeals held that the letter was a valid notice. Since that issue was not appealed to this court, and because the certified question implies that two valid notices were given, we are assuming, without deciding the issue, that the first letter was a valid notice.

**FRANCIS E. SWEENEY, SR., J.**

{¶ 6} The issue certified for our review is: "Where a party timely files more than one statutory notice of intent to sue in accordance with R.C. 2305.11(B)(1), does the statute of limitations for medical malpractice bar prosecution of an action for malpractice commenced within 180 days of the latest of these notices?" We answer this question in the negative and affirm the decision of the court of appeals.

{¶ 7} Generally, a medical malpractice lawsuit must be brought within one year after the cause of action accrues. R.C. 2305.11(B)(1). However, R.C. 2305.11(B)(1) also provides an exception to this rule by affording litigants the opportunity to extend the one-year statute of limitations for an additional one hundred eighty days from the time proper notice is given to potential defendants.

{¶ 8} R.C. 2305.11(B)(1) states:

"Subject to division (B)(2) of this section, an action upon a medical, dental, optometric, or chiropractic claim shall be commenced within one year after the cause of action accrued, except that, if prior to the expiration of that one-year period, a claimant who allegedly possesses a medical, dental, optometric, or chiropractic claim gives to the person who is the subject of that claim written notice that the claimant is considering bringing an action upon that claim, that action may be commenced against the person notified at any time within one hundred eighty days after the notice is so given."

{¶ 9} In this case, we are asked to decide the effect of sending multiple statutory notices of intent to sue, more commonly referred to as one-hundred-eighty-day letters. Ortega contends that under R.C. 2305.11(B)(1), a claimant has one opportunity to extend the period of limitations by notifying potential defendants of a possible lawsuit. Ortega relies on *Woods v. Dutta* (1997), 119 Ohio App.3d 228, 695 N.E.2d 18. In that case, the claimant sent two one-hundred-eighty-day letters to the potential defendants and filed her complaint within one

hundred eighty days from receipt of the second letter. The Fourth District Court of Appeals found that the second letter was without effect, calculated the one-hundred-eighty-day period from the time the first letter was received, and found that the claimant's cause of action was barred by the one-year statute of limitations. In so holding, the court reasoned that the language of R.C. 2305.11(B) "evidences a legislative intent that a single, effective notice be given as opposed to multiple ones." *Id.* at 232, 695 N.E.2d at 20. Under this rationale, Ortega maintains that since Marshall did not commence her lawsuit within one hundred eighty days from when the first one-hundred-eighty-day letter was received, Marshall's cause of action is time-barred by the one-year statute of limitations.

**{¶ 10}** Marshall, however, believes that *Woods v. Dutta* was wrongly decided. Marshall maintains that R.C. 2305.11(B)(1) does not limit the number of one-hundred-eighty-day letters that can extend the time limit. She argues that where a claimant sends multiple one-hundred-eighty-day letters that are received within the one-year statute of limitations, the last written notice is controlling for purposes of extending the statute of limitations for one hundred eighty days. We agree with appellee and do not find the reasoning employed by the Fourth District in *Woods v. Dutta, supra*, persuasive.

**{¶ 11}** Prior to its amendment in 1987, former R.C. 2305.11(A) referred to "a" written notice. 141 Ohio Laws, Part II, 3228-3229. Thus, the court in *Johnson v. St. Luke's Hosp.* (1981), 2 Ohio App.3d 427, 2 OBR 521, 442 N.E.2d 768, correctly held that former R.C. 2305.11(A) provided for the use of only one notice, and that where more than one notice was sent, only the first notice had any legal effect. R.C. 2305.11(B), however, is not as restrictive as its predecessor. R.C. 2305.11(B)(1) now provides that "written notice" can extend the time limit. Thus, in amending the statute, the General Assembly deleted the word "a" (referring to "a written notice") from R.C. 2305.11. We believe that this evidences the

legislative intent that under the current version of R.C. 2305.11 more than one notice can be effective in extending the time limit.

{¶ 12} This interpretation is supported by sound policy considerations as well. R.C. 2305.11(B)(1) was enacted in order "to decrease the likelihood of frivolous medical malpractice claims by allowing parties and their attorneys additional time to investigate a potential claim which is brought to their attention shortly before the one-year statute of limitations expires." *Edens v. Barberton Area Family Practice Ctr.* (1989), 43 Ohio St.3d 176, 177-178, 539 N.E.2d 1124, 1126. To effectuate this purpose, claimants are afforded the opportunity to extend the one-year statute of limitations for one hundred eighty days. In *Edens, id.* at 180, 539 N.E.2d at 1128*,* we held that "where a statute such as R.C. 2305.11(B) is silent as to how notice is to be effectuated, written notice will be deemed to have been given when received." Thus, for purposes of calculating the one-hundred-eighty-day period, a claimant will have an additional one hundred eighty days from the time the notice is received by a potential defendant.

{¶ 13} Ortega argues that a claimant should not be able to send multiple one-hundred-eighty-day letters to repeatedly extend the statute of limitations. But R.C. 2305.11(B)(1) does not afford a claimant the right to endlessly extend the statute of limitations. Instead, R.C. 2305.11(B)(1) affords a claimant the right to extend the statute of limitations for a *maximum* period of one hundred eighty days beyond the one-year statute of limitations. Thus, a claimant is able to receive the full benefit of the additional one hundred eighty days only if the one-hundred-eighty-day letter is received by the potential defendant on the last day of the period of limitations. If, however, a claimant sends a letter earlier but then needs additional time to investigate the claim, the claimant may choose to send an additional one-hundred-eighty-day letter. Under either scenario, the claimant is not seeking any more time than the statute allows. However, if we accepted Ortega's position and gave effect only to the first one-hundred-eighty-day letter, we would

be cutting off a litigant's right to obtain the maximum one-hundred-eighty-day extension. We would thus be penalizing the claimant who needs additional time to investigate and, in particular, the claimant who acted responsibly on giving early notice to a potential defendant. This result would run contrary to the purpose behind R.C. 2305.11(B)(1) and unduly restrict a claimant's ability to commence a lawsuit.

{¶ 14} Since the language of R.C. 2305.11(B) does not limit the number of effective one-hundred-eighty-day letters a claimant can send and since the legislative intent is to afford malpractice claimants with the maximum amount of time in which to investigate their claims, we find that a claimant is not limited to the time extension of a first one-hundred-eighty-day letter. Instead, we hold that pursuant to R.C. 2305.11(B)(1), a medical malpractice claimant can send more than one effective notice of intent to sue prior to the expiration of the one-year statute of limitations set forth in R.C. 2305.11(B)(1).

{¶ 15} Clearly, to be valid, the one-hundred-eighty-day letter must comply with the requirements set forth in R.C. 2305.11(B)(1).[2] The letter must be received within the one-year period of limitations and must state that the claimant is considering bringing a malpractice action against the recipient. Although the statute does not designate the manner of service, clearly the preferable methods are those in which there is verification of receipt, such as registered or certified mail, so that a medical malpractice claimant can know and prove that the letters have been received by the potential defendants within the one-year statute of limitations.

{¶ 16} In sum, we conclude that where a party complies with the requirements of R.C. 2305.11(B)(1) and sends multiple written notices of intent to sue prior to the expiration of the one-year statute of limitations set forth in R.C.

---

2. To have any effect, the one-hundred-eighty-day letter must also be received sometime during the last one hundred seventy-nine days of the one-year period of limitations. *Edens*, *supra*, 43 Ohio St.3d at 178, 539 N.E.2d at 1126. Otherwise, the notice is premature and the one-year statute of limitations will control. *Id.*

2305.11(B)(1), the one-hundred-eighty-day period begins to run from the date the last notice is received by the potential defendants. The statute of limitations will not bar prosecution of an action for malpractice commenced within one hundred eighty days of the last notice.

{¶ 17} Applying the statute to this case, we find that the one-hundred-eighty-day period began to run when the March 9, 1995 letter was received by appellant. Since appellee filed suit within that one-hundred-eighty-day period (on September 1, 1995), her cause of action is not barred by the statute of limitations set forth in R.C. 2305.11(B)(1).

{¶ 18} Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., dissents.

_____

**COOK, J., dissenting.**

{¶ 19} The majority declares that the legislative intent of R.C. 2305.11(B) is "to afford malpractice claimants with the maximum amount of time in which to investigate their claims." If this statement were true, there would be no statute of limitations. After all, a statute of limitations by its very nature *limits* the amount of time for litigants to investigate their claims prior to filing.

{¶ 20} We are to construe statutes of limitations broadly so that cases may be decided on their merits. See *Gregory v. Flowers* (1972), 32 Ohio St.2d 48, 61 O.O.2d 295, 290 N.E.2d 181, paragraph one of the syllabus; R.C. 1.11. But here we are concerned with an *exception* to a statute of limitations—an exception which should be strictly construed in order to effectuate the public policy against stale claims. See *Powell v. Koehler* (1894), 52 Ohio St. 103, 39 N.E. 195, paragraph

three of the syllabus; see, also, *Moore v. Dist. 50 of United Mine Workers of Am.* (C.P.1954), 71 Ohio Law Abs. 317, 319, 131 N.E.2d 462, 463.

{¶ 21} Here, the parties agree that the first notice met the statutory requirements of R.C. 2305.11(B). So the first notice was effective and was not nullified by the second one. Given that receipt of the first notice (on February 16, 1995) started the one-hundred-eighty-day period, the complaint filed beyond the one-year statute of limitations and more than one hundred eighty days after receipt of the first notice was untimely.

{¶ 22} For the foregoing reasons, I would reverse the judgment of the court of appeals.

_____